As to Mr. Weeks' claims, essentially he raised two claims. One was a deliberate indifference to serious medical needs, which has two components to it. One is that, dating back to about 2008, when he was diagnosed with needing spinal surgery, that surgery was delayed until 2017. And then the second component of that was failure to give him medical treatment after that period of time for his spine. And then the other issue is the excessive force case against the Missouri Department of Corrections defendants. That is, after Mr. Weeks had surgery in December 2017, that during his transportation to the correctional center where he was going to spend the night at, that officers used excessive force in taking him to that facility. I think given the voluminous record in this case and the number of defendants, I was just going to focus on primarily three issues today. But if the judges have any questions on the other issues, I'll be happy to answer those. And obviously I'm not waiving those for purposes of the appellant argument. The first issue would be whether or not the district court erred in finding that the Corizon defendant, specifically Corizon, which is the health care provider for the Missouri Department of Corrections, whether they were deliberately indifferent to Mr. Weeks' serious medical needs. I don't think there's really any doubt that Mr. Weeks had a serious medical need, given it was well documented that he needed spinal surgery over a long period of time. He had put in for a number of requests for MRIs and surgery. That was delayed. And finally, as I previously mentioned... Some of the delays were caused by him. At one point he said he didn't want to have the surgery right then, he'd have it later. Then he said he wanted the surgery. Then he said that I can't do the MRI because I'm claustrophobic. So there's a lot of delay going on here that really is on your client, right? Judge, I agree to some extent, but there's also some of that that's kind of debatable. I mean, whether or not he really at one point... I mean, the state says yes. I think dating back to when he was incarcerated at the South Central Correctional Center, I believe it was, that he had said, well, no, I'm getting out of prison, so I don't want the surgery now. Mr. Weeks, as well as because he was being placed in Ad Seg and was eventually being transferred to a different prison. So I think there's some dispute on some of that. But I think overall, though, even after Mr. Weeks had his surgery in 2017, he said, look, I think I need some additional follow-up on this. And there were denials of... At that time he was incarcerated at the Southeast Correctional Center, and at that point the state was going to refer you to some MRIs, and those were denied. So I think that pattern continued throughout, has continued throughout the whole time. And, you know, whether those are true of Mr. Weeks or not, maybe some, but I would think, you know, I think the majority of those are probably on Kryzant's, you know, that's their deliberate indifference on those. So one of the issues is that the district court found in focusing on the Kryzant defendant that there wasn't any type of policy that they actually denied. Mr. One obviously denied him the, you know, the medical treatment at that time. And I would say that there's questions of material fact that do exist that whether Kryzant were deliberately indifferent to the serious medical needs on that. I think, again, Mr. One thing that the district court, you know, noted was, well, you didn't have a medical expert in this case to show that, you know, the treatment, you know, that he had suffered harm from this lack of treatment. And I know in the brief, Mr. Weeks argued the Hartsfield v. Colbrin case, which is a 2004 case in which the court said, well, you don't, I think in that case the district court denied the petitioner, I'm sorry, the complaint on the basis that there was no verifying medical evidence in the record. And I think this is a case where the, it was actually a pretrial detainee, but it was analyzed under the Eighth Amendment. And in that case, it was obvious that the plaintiff had serious dental problems. And that was something that was obvious that a layperson could recognize. And obviously that amounts to an Eighth Amendment violation. In this case, though, there's no medical evidence really on the plaintiff's side other than what Kryzant provided. And I think Kryzant also has medical evidence saying, well, that I wonder what we do with that. There's no evidence saying this was reckless or, you know, this was under the standard of care even for the plaintiff. And you don't have any specific medical records saying they definitely did this wrong. Like there's a botched operation. There was whatever the case may be. So what do we do with the fact that we don't have specific medical evidence in favor of the plaintiff here? Well, Judge, I think there is medical evidence. I mean, I think Mr. Weeks has reported pain, suffering through the years. Yeah, but you had a failed back syndrome, you know. And if you just look at failed back syndrome generally, I mean, it is by definition. You've had surgery, surgery failed to alleviate the pain and suffering. You've got ongoing pain and suffering. You have surgery again. The risk of that second surgery is well known. It can include paralysis and death and ineffectiveness. You know, that's just a known risk because people with failed back syndrome oftentimes have untoward outcomes, right? That's just the reality. And without any medical evidence here, we have no basis for deciding that, you know, the deliberate indifference that you're alleging is primarily in the failure to act promptly, right? Judge, right, exactly. Failure to... So you've got to show a causal nexus between that failure to act promptly and whatever it is that he's suffering from now, right? Because there's got to be a nexus. Weeks has to suffer some loss as a result of that. And it's got to be more than mere negligence because it's not a malpractice statute. It's a deliberate indifference statute, which requires a much higher showing of some sort of bad conduct on the part of Kharizia. Judge, I agree with your analysis or with the deliberate indifference analysis. Obviously, there's the objective component. Do you have a serious medical need? I don't think in this case there's any doubt that there was a serious medical need. But then I think what you're focusing on is the second component, the subjective component, whether it was deliberate indifference. Yeah, you've got both things. You've got deliberate indifference, and then you still have to show that it caused some harm. And I think the harm can be shown by repeated requests. So the harm is in suffering before the surgery? Yes, Judge. And it's not that the outcome is still not favorable at the end. That's a malpractice claim or something else. Whatever it is, it's not part of the deliberate indifference claim. That's correct, Judge. And I think that even after the surgery, obviously, as you pointed out, Field-Back Syndrome does have its issues. I mean, at least is surgery going to be, you know, whether or not surgery is actually going to correct it or not. And so we don't need, in your worldview, we don't need any medical expert to tell us that while you're delaying, he's suffering and in great pain, and there's a possibility that pain may have been alleviated, and your failure to act is deliberately indifferent at that point. That's correct, Your Honor. And I think it's because it's an obvious medical condition that's not being treated. I think there's even cases out there that a circuit case, I think it's a, I don't know if it's in the brief, but Nelson v. Correctional Medical Services that talks about, you know, potential harm is even enough that you necessarily do not have to show. And I think just given the overall, the time period that this went on for, I think that he's shown a deliberate indifference in this case. The other issue that I wanted to touch on, too, well, we kind of talked about the material, whether or not there was deliberate indifference. Regarding Mr. Weeks' second claim, or actually claim number two in his Third Amendment complaint, he alleged an excessive force claim against a number of Missouri Department of Corrections defendants. And this allegation arises, or this claim arises from the fact that after he had his surgery, his back surgery in 2017, December of 2015, he was transported in a prison van, a cage van, not a handicap van, to the next correctional center, which was the Jefferson City Correctional Center, that time to spend the night while he was, before being taken to the Southeastern Correctional Center the next day. And the allegations in that is that Mr. Weeks has alleged that specifically defendants Bark, Moses, and Kotwicz used excessive force against him in transporting him. He's made allegations that they pushed him into the van, he fell into the van, they drug him out of the van after he got to the prison. Now, there is video footage, as the judge that was submitted, showing Mr. Weeks entering the van. It doesn't show any type of assault by these defendants. But at that that's an interesting thing. You know, when you look at the language that we've used in the past, we've talked about malicious and sadistic force by prison officials with intent to cause injury, and nothing in that video looks like anybody's about any sort of sadistic or malicious stuff. In fact, it looks like they recognize he's got difficulties and they're actually assisting him gingerly into the bus. Now, the story kind of in the affidavit is that somehow, as they're getting into the, I guess it's a cage van or whatever it is, you know, but as you're getting into the vehicle, that somehow when the video is no longer visible, this thing changes into a much more kind of forceful, you know, assaultive kind of conduct on the part of the guards who are doing the self-serving affidavits in this case. And so the question kind of becomes is how do we get around, you know, we've got the video evidence, which really can't answer what happens inside there, but we also have this standard which says that your affidavit, if it's simply self-serving and uncorroborated, that we don't give it great weight. So how do we deal with this? Well, what you mentioned, Judge, too, is interesting because the video obviously is just at the beginning where they're taking him from the hospital into the van. There is no video that exists in the district court to give great weight to the fact that when he did arrive at the Jefferson City Correctional Center that there wasn't any video or anything. So I guess my question with that would be then, you know, what evidence is sufficient other than his allegations? You know, if you're going to accept that, you know, the video doesn't show anything, you know, getting into the van, then what, as you pointed out, what does he need to show once he gets to JCCC? And I don't know without his allegations, without crediting those or giving them some type of, you know, weight to them, I don't know how he proves that claim. Yeah, you know, it's interesting because usually in these sort of excessive force claims you have evidence in the nature of what's the guy's body look like when he gets to wherever he's going and he shows signs of struggle or injury, right? Exactly. And here what you've got is a claim that there's what the catheters pulled out, which can happen pretty easily generally, you know, with people who are having to be assisted by transportation because anytime you assist somebody you can yank on a cord or something, a tube and that's the end of that. And then there's a claim of some blood in his urine, but other than that there's really no evidence of this sort of sadistic and malicious attack. And I guess, Judge, that would be what the district court then gave weight to as far as not showing that there was, you know, deliberate, I'm sorry, the harm that occurred from, as you said, a sadistic or malicious act under Whitley v. Albers, I think. Yeah, and I think that, you know, the Supreme Court's kind of made clear that for a long time we kind of thought that you had to show direct injury and it had to be demonstrable, and now they say that, well, it doesn't necessarily have to be there, although it's part of the analysis. But in this case it would just simply be, is there evidence, physical evidence, that would suggest that some untoward force was exerted on it? Yeah, so it has to be more than de minimis, the injury. And I think Mr. Weeks in his deposition has testified that he suffered more than just a minimus injury. He hit his head, they pushed him in the van, as you mentioned the catheter issue. So I think on that issue I think he's raised enough at least to survive summary judgment and give it a, you know, have this go to trial. I think he's done enough on that issue. I'll go ahead and reserve my time unless there's any other questions. Thank you. All right, Mr. Eckenrode and you are, you and Ms. Walsh are dividing your time. All right. I represent Corizon. Good morning, your honors. Thank you. May it please the court. As you've already heard from my As the district court did, I think the easiest way to understand their role is to compartmentalize the various allegations against them. As to Corizon, as the court is obviously aware, Corizon cannot be vicariously liable for deliberate indifference, so the only question is whether a Monel allegations have been made and have they been established. I think as the district court found, there is no unconstitutional policy in any way at all. What opposing counsel apparently wants to do is somehow conflate the idea that there is a pattern of conduct that rises to the level of a policy. So he's used the term pattern both in briefing and even here today in oral argument because there are allegedly multiple events of alleged improper care. Even in fact there are multiple events, that doesn't evidence a pattern. Therefore, as to Corizon itself, I don't think there is a constitutional claim that can be made against them. The allegations against the individual defendants, and I've got a baker's dozen of them obviously, include prior to the time of surgery, several years in which there is allegations that he was not provided with MRIs, surgical referrals. As Judge Erickson has already noted, obviously there is evidence that some of that was based upon his own actions. He obviously didn't want to get into an MRI. I fully understand that. You're not getting me into one of those things. So that's an issue. He obviously at some point in time was sedated. He had one. Obviously, he has had failed back syndrome for years, but he was referred out to a surgeon. He went out to a surgeon. The surgeon basically told him, I can perform an operation on you, but I can't guarantee an outcome. In fact, there's a good chance you're not going to get any better. But Corizon allowed that to go forward. He had the surgery. So for those years leading up to surgery, the allegations against the number of Corizon defendants are that there was deliberate indifference in not providing him MRI and surgery, but he got those things. And the delays that were involved were not constitutionally deficient delays. To the extent that he wasn't provided care, he was. I think the evidence is very clear that over the years he was seen regularly. I think some of the testimony in the record, and of course the district court's order is 40 pages and is very well thought through, but there was 60 or so self-declared emergencies that were responded to. There were several medical service requests that were responded to. He was getting medication. He was getting physical therapy. So he was being addressed by the Corizon defendants. Yes, sir. You know, there was an allegation, and I should have asked this of opposing counsel, but that there was a grievance filed and it took, what, two years for Nurse Leia, Molly Leia, to actually operate on it or to act on it. I looked in the record and didn't find it myself. So I'm wondering, is it in the record someplace? In all honesty, Your Honor, I looked again for that this morning and I can't find that. And I know that there's some issue as to how long some of those occurred. This gentleman filed a lot of grievances, and as you know by the grievance numbers. Yeah, I know, but I couldn't find that. Right. I couldn't find it either. And in all honesty, if it's there, I'll acknowledge it might very well be there. The fact of the matter is if a grievance wasn't responded to, that by itself doesn't raise a constitutional violation. It may very well be a paperwork issue. It may be negligence. You know, it may be a negligent issue, but it's not deliberate indifference unless there's evidence that she specifically put it aside and said, I'm not going to address this. And I don't know whether or not she didn't address it for two years and finally got addressed. But responding to grievances, I think, is on the periphery of not even having a role in providing medical care. These are people who aren't doing direct health care with the patients. They're administrators looking at the paperwork. They see what he's alleged. They do their investigation to see if what he's alleged is true and whether or not the care was appropriate, and they respond. So if that took two years, it may have, but it didn't actually cause him any injury, because in the meantime, he was getting care by other health care providers. So if that occurred, and Your Honor, you're right, I can't find it either. I really can't explain that, but I don't think it's a constitutional violation. So obviously, we get to the issue of he has surgery. One of the allegations is after surgery, he spends one night at JCCC, Jefferson City Correctional Center, where three of the defendants provided him care. The evidence is very clear that he did get medication while he was there. He was watched. He didn't have any complaints. So the allegation against them for their one night of care seems very tenuous. Then he's transferred back to SECC, where again, the care after that is very attentive. He is monitored daily. He's evaluated. He is again provided with physical therapy. He's again provided with medication. He's provided with pain relief. He is monitored. He's doing better. So I think at the end of the day, Your Honors, what this really is, it's a case in which retrospectively, Mr. Weeks was not happy with the care he got. He wanted different care. He raised questions about why can't I have a cane, which as Your Honors probably know, unless there's a medical reason to do so, they don't allow canes in prison because of what can happen with them. And there was his own outside surgeon said that he didn't need some of the things that he was requesting. So the care provided across the board, I think, by the health care providers obviously met the constitutional requirements. I think in retrospect, this is just a matter of a man who did not like what he was getting or wanted something different, which of course the Constitution does not provide for. Finally, just to finish up before I turn it over to Ms. Walsh, counsel has talked about his lack of an expert witness or lack of any medical evidence. But the issue of whether or not somebody has a condition that's obvious to a layperson goes to the definition of serious medical need, not to the proof of causation. And if he had a serious medical need because he had failed back syndrome, I don't think there's any question that that was in fact recognized and was addressed constantly. But you can't use the obviousness of a serious medical need as proof that there has in fact been a detrimental effect of the care that you're getting. So with that, I'm going to turn over the rest of my time to Ms. Walsh. Thank you, Your  So the defendant basically had three claims against the Department of Correctional employees. One was the use of force, deliberate indifference in regard to the transportation. One was a failure to intervene once he arrived at the prison, and the last were supervisory failure to train claims. The failure to intervene and the failure to train claims were not briefed before the courts, so we believe those claims have been waived, and Mr. Weeks' attorney did not mention those at all in his opening argument. In regard to the use of force claims, in the Third Amendment petition, Weeks alleged that Bark and Moses removed him from the hospital, placed him in hand and leg restraints, dumped him in a wheelchair to take him to the parking lot. Once there, they forced him to step up four feet into the prison cage van and bend over while physically assaulting him in order to get into the van. Now, first I'd like to point out I'm five feet tall, so we're basically talking about this high for him to step up. That's not a normal prison van. That's a funny van with big wheels. So, the four feet is some of what he's alleged, I would suggest, is an exaggeration. The video footage, as was discussed earlier, refutes his account of how he was treated in getting into the van. He was able to stand out of the wheelchair, and he was able to step into the van with assistance, and they did provide assistance. Now, it's true that once in the van, and this was hospital video, once in the van, we did not have video. But essentially, there was no evidence that he was shoved or thrown into the van. What the video did show was that he was assisted into the van and assisted into a seat. So, he was not on the floor, he was in a seat, and he was not, at least up until that point, physically assaulted. The district court accepted that Mr. Weeks was experiencing discomfort while he was struggling to get into the van. But again, the video showed that the officers were assisting him into the van, and were slowly and gently, and that they eased him into the seated position. The officers were not privy to any of the information, the post-operative notes. Those were placed into an envelope that was delivered to the medical, what's called the TCU, Transitional Care Unit at Jefferson City Correctional. They did not read it. However, all of the things that happened were not in violation of any of the notes that the surgeon had provided. He didn't say he couldn't walk, didn't say he couldn't stand, said he couldn't bend over at the waist, but it didn't say he couldn't bend at all. It basically said, and it didn't say he couldn't stoop. Nothing that happened was in violation of the discharge notes. Once they arrived at JCCC, there is no video because of the lateness of the day. So the sally port, where they usually bring the prisoners in, which would have had video, was already closed. So he was brought into the front entrance of the prison, which does not have video. While there is no video, what he alleges occurred is not supported by what happened once he got in the prison, which was he went to the Transitional Care Unit and he basically did not tell them that there had been a use of force and he did not tell them that he was hurt in any way other than just had spinal surgery. He denied complaint while he was in the Transitional Care Unit. The medical notes note that as far as the urine and blood in his urine, his urine was straw-colored through the catheter and there was no evidence of a cut in his urethra or of a busted eardrum, which was never actually diagnosed. He can't meet the element that he was sadistically by these people because there is absolutely no medical evidence to show that he was harmed in any way. The only reason he was in the Transitional Care Unit at JCCC was for post-operative care and that's what the medical notes do reflect. As there was no substantive evidence, I understand that Mr. Schreiner states that the only way he can prove his case is by self-serving allegations, but that's not true. He could have proved his case by showing what damage had occurred to him because of the use of force and there is no evidence of that. Because of that, the district court's judgment granting summary judgment on the use of force should be affirmed. In regard to the cage van and the deliberate indifference of using a cage van instead of a handicap van, they would have had to have known and disregarded an excessive risk to his health and safety, and the level of disregard here is criminal recklessness. None of that can be shown by the record that's before the court. As I said, they did not receive any kind of information on what his medical condition was. He was able to step into the van with assistance. He was seated. Videos showed that they helped him and there were no restrictions that were violated in putting him in the van. The fact that it's a cage van instead of a handicap vehicle or apparently he was able to talk Southeast Correctional Center into a minivan because he says he has claustrophobia in the cage van means nothing because he was at JCCC. There's no evidence that they knew that he had negotiated with SECC to ride around in a minivan or that what they did was in a policy. The policy actually was that even if he is disabled, safety and security come first, and it was the prison that decided that it should be a caged van. Therefore, none of the actions here were sufficient to rise to the level of criminal recklessness and the deliberate indifference claims against these officers should also be affirmed. As I said, the other two claims, the failure to intervene and the failure to train, were waived and the trial court found also that they couldn't be sustained without a constitutional violation on the excessive force. I'm sorry, the district court. Therefore, those should also be affirmed. Thank you, Your Honor. Judge Erickson, I believe you were asking about the molly lesia. I found in the record at the appendix, it looks like on the appendix at A29, the district court does make reference to the, but there's no citation at that point, so I'm not sure where in the record. I can find that for you and follow up, but district court does make reference to it. I'm not sure if that's a Mr. Weeks from his deposition or if there was an actual grievance for that. Just real quickly, a couple things on the excessive use of force claim. Again, as we discussed, the district court found that Mr. Weeks' self-serving allegations weren't sufficient. We've discussed that. I think he has brought some evidence into play that should result in this court reversing the district court's grand summary judgment on that surgery. He was transported by barockibosis to the Jefferson City Correctional Center. It wasn't a handicapped van. Again, as we discussed earlier, there was no video at the Jefferson City Correctional Center to document anything that had occurred. Again, I know the state has argued, or the Missouri Department of Corrections defendants have argued that he could have proven that with the subsequent medical evidence, but again, I think his allegations, what he's alleged as far as injuries, suffices in that situation. Mr. Weeks would ask that this court vacate the district court's grand summary judgment and remand the case for trial. Thank you very much. Thank you, counsel. All right. The case is submitted. We appreciate your arguments this morning. The decision will be rendered in due course. With that, counsel may